IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES T. SULLIVAN, etc., et al., )
)
      Plaintiffs, )   No. 06 C 2464
)
  v. )   Hon. David Coar
)
GENERAL PLUMBING, INC., an Illinois )
corporation, )
)
      Defendant. )

MEMORANDUM OPINION AND ORDER

This case comes before the Court on Defendant General Plumbing's Motion to Vacate the Default Judgment [Doc. No. 16] entered against it on June 17, 2006. This motion seeks relief under Rule 60(b)(1) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's Motion is denied.

BACKGROUND

Plaintiffs James T. Sullivan, Plumbers' Pension Fund, Local 130, U.A., Plumbers' Welfare Fund for Apprentice and Journeymen Education and Training, Local 130, U.A., Group Legal Services Plan Fund (collectively "Funds") and The Plumbing Council of Chicagoland ("PCC"), filed suit in this Court on May 3, 2006. Funds and PCC allege that defendant General Plumbing was liable under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001, *et. seq*.

Prior to the filing of this lawsuit, Plaintiffs and the Defendant had engaged in settlement discussions concerning an arbitration Award. On April 14, 2005, the Joint Arbitration Board

directed General Plumbing to pay an amount of money to the Funds. The Award was made upon a finding that Defendant violated the Collective Bargaining Agreement by allowing non-union employees to perform plumbing work from November 1, 1999 through December 31, 2002. (Complaint ¶¶1-12).

The settlement discussions occurred between the same counsel who are currently representing the parties. The parties had agreed to refrain from further action on the Award during settlement discussions. Defendant, upon agreement of Plaintiffs, was given until July 25, 2005 to challenge the Award. Similarly, Plaintiffs, upon agreement with Defendant, voluntarily refrained from filing this lawsuit until August 31, 2005. Eventually, settlement discussions came to an end in March of 2006 with no resolution. During these settlement negotiations, the sole shareholder of the Defendant, Patrick Heneghan, died on September 26, 2005. (Heneghan Aff. ¶ 7). Before filing the lawsuit, Plaintiffs' counsel was aware that General Plumbing was no longer in operation, was without assets and that General Plumbing's sole shareholder, Patrick Heneghan, had died. (Pl.'s Resp., Att. #7). The last contact between the attorneys during settlement discussions occurred on March 27, 2006, when Plaintiffs' counsel left a voice-mail message with Defendant's counsel about the possibility of an agreed judgment. (Lindsay Aff. ¶ 16).

Around two months after the last settlement contact, on May 3, 2006, Plaintiffs' Complaint was filed. Although the death of the sole shareholder of General Plumbing occurred before this lawsuit was filed, no new registered agent or new address for the company was ever listed with the Illinois Secretary of State. Plaintiffs sent a copy of the Complaint and summons to

the last registered agent or officer of the corporation in compliance with state law. *See* 805 ILCS 5/5.25. Defendant does not contend that service of the Complaint was defective.

The Motion for Default followed and was filed with a presentment date of June 15, 2006. The Motion was sent to the Illinois Secretary of State and the Defendant's registered office. Plaintiffs did not contact General Plumbing's last known attorney about the Complaint or Motion for Default. The default judgment was entered by the court on June 17, 2006 in the amount of $163,486.90.

General Plumbing never filed an answer and did not appear at the motion presentment date for the default request. General Plumbing claims that it did not receive notice of the lawsuit until June 24, 2006. Although General Plumbing does not argue that service of the Complaint was defective, they do argue a number of factors existed which it believes contributed to the lack of timely actual notice. Primarily, the service of the complaint and default were sent to General Plumbing's building address, which did not exist at the time of service.

In support, Defendant offers an affidavit and declarations of family members of Patrick Heneghan.[1] First, around January 1, 2005, Patrick Heneghan decided to close down General

---

[1] Plaintiffs have filed motions to strike Defendant's supporting affidavit and declarations. Because the declaration of attorney Ronald J. Kramer is not notarized or subscribed under penalty of perjury, it will not be considered and the motion to strike will be granted. *See DeBruyne v. Equitable Life Assur. Soc.*, 920 F.2d 457, 471 (7th Cir. 1990). The declaration of Joan Heneghan was subsequently subscribed under penalty of perjury [Doc. No. 36-1]; therefore, the motion to strike her declaration will be denied. Finally, the affidavit of Ann Heneghan sufficiently sets forth her employment relationship and familial relationship with Patrick Heneghan and General Plumbing to adequately describe the general information on the closure of the business and mail issues. However, the affidavit fails to set forth a basis for personal knowledge on the audits at issue in this case as required by Fed.R.Evid. 602. Ms. Heneghan attests that she was employed by General Plumbing in early 2003 and subsequently "would consult with Patrick Heneghan on General Plumbing's business related issues." (Heneghan Aff. ¶ 2). This statement is insufficient to provide an adequate foundation for Ms. Heneghan's statements concerning the audits at issue. The motion to strike the Heneghan affidavit will be granted, in part, and denied, in part. Paragraphs 14 through 16 will be stricken due to insufficient foundation.

3

Plumbing and demolished the building which housed General Plumbing. (Heneghan Aff. ¶ 4). Although the business was closed down as early as January of 2005, there is no indication in the record that the business was formally dissolved. Even before the business closed, Patrick Heneghan began construction of housing units at the former building site. (Heneghan Aff. ¶ 6). The housing units were destroyed in a fire around December of 2005 and were subsequently under construction again. (Heneghan Aff. ¶ 7 ). Ann Heneghan attested that mail for General Plumbing was to be forwarded to a P.O. Box in Lombard after the closure of the business. (Heneghan Aff. ¶ 5). Ms. Heneghan also stated that mail for General Plumbing was sometimes delivered by the Post Office to the former site of General Plumbing, which was a construction site for the housing units. (Heneghan Aff. ¶ 8). Ms. Heneghan attested that she was asked to check the mail at the former General Plumbing site and found the notice from the court of the default judgment on June 24, 2006. Upon finding the notice, she contacted counsel for General Plumbing, Mr. Kramer. (Heneghan Aff. ¶ 11). The present motion to vacate was filed on July 17, 2006.

LEGAL STANDARD

Defendant moves to vacate the default judgment under Fed.R.Civ.P. 60(b)(1). Rule 60(b)(1) permits relief for judgment on grounds of mistake, inadvertence, surprise, or excusable neglect. *Easley v. Kirmsee*, 382 F.3d 693, 697 (7th Cir. 2004). General Plumbing sole basis for seeking to vacate the default judgment is on the ground of excusable neglect under Rule 60(b)(1). The standard for evaluating a motion to vacate under Rule 60(b) is applied more stringently when some party wishes to vacate a judgment rather than a mere order. *Jones v.*

4

*Phipps*, 39 F.3d 158, 162 (7th Cir. 1994); *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007).

DISCUSSION

"Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005) (internal quotation omitted). General Plumbing bears the burden of showing: (1) good cause for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense. See *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994); *Jones*, 39 F.3d at 162.

The Supreme Court has defined "excusable neglect" as "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 388 (1993). The Seventh Circuit has found that "excusable neglect" under Rule 60(b)(1) is "limited and stringent" and "requires something more compelling than ordinary lapses of diligence or simple neglect to justify disturbing [the judgment]." *Jones*, 39 F.3d at 162.

*Good Cause*

Defendant offers that the delay in responding to the lawsuit was caused by the "tempest of chaos surrounding General Plumbing, including the death of its owner, the massive fire on the property where it used to be located, and the Post Office's failures to deliver General Plumbing's mail to the P.O. Box in Lombard . . . ." (Def.'s Mot. at 7). Had General Plumbing updated its

5

corporate filing with the Illinois Secretary of State to indicate a new address or new agent, notice of the Complaint would have been effectuated. But, that did not happen. Defendant's affiant, Ann Heneghan attests that Mr. Heneghan, General Plumbing's sole shareholder, decided to close down the business around January 1, 2005, seven months before his death. (Ann Heneghan Aff. ¶¶ 4, 7). Further, beginning in early 2005, the physical location of the business was torn down and residential housing was built in its place. (Heneghan Decl. ¶ 2). It appears that no changes were made to the corporate information kept with the Illinois Secretary of State in light of these circumstances, even though there was a legal obligation to do so. *See* 805 ILCS 5/5.10 ("[A] domestic corporation shall change its registered agent if the office of the registered agent shall become vacant to any reason, or if its registered agent because disqualified or incapacitated to act.").

Defendant also argues that the Post Office failed to follow forwarding directives and sometime left mail at the doorstep of the under-construction housing units. However, this does not completely absolve the Defendant. By their own declaration and affidavit, the widow and sister-in-law of Mr. Heneghan were aware of the problems with delivery of mail to General Plumbing. Based on the affidavit and declaration there is an acknowledgment that some General Plumbing mail was left at the residential housing site (formerly the site of General Plumbing) and was not forwarded to the P.O. Box in Lombard. (Heneghan Aff. ¶ 6; Heneghan Decl. ¶ 3).

In addressing the level of culpability to assess, Defendant argues that the proper concept to apply is one of "willful neglect" not just negligence. While the common thread on a Rule 60(b) motion to vacate a default judgment does depend largely on the willfulness of the defaulting party's actions, "Rule 60(b) is applied liberally . . . only in the exceptional

circumstances where the events contributing to the default judgment have not been within the meaningful control of the defaulting party, or its attorney." *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1206 (7th Cir. 1984).

The inaction of the Defendant was not due to the death of the sole shareholder. Rather, the sole shareholder had decided to shut down the company, tear down the building and build residential units on the former building site before his death. Defendant's negligence in responding to the Complaint was principally based on its own inattention to its obligation as a corporate entity to follow appropriate procedures to update its corporate filings or dissolve the corporation.[2]

*Prompt Action*

Three weeks after receiving notice of the default judgment, Defendant's counsel filed this motion to vacate. Defendant argues that it acted promptly in seeking to vacate the default judgment against it in this case. (Def.'s Mot. at 7). What is considered "prompt action" is determined on a case-by-case basis. *Jones*, 39 F.3d at 165. In some cases a delay of even a few weeks is unacceptable. *Id*. at 158. In others, a ten-week delay is still considered prompt action.

---

[2] Defendant also argues that Plaintiffs' attorney was well aware that General Plumbing was represented by counsel yet did not contact counsel to inform him that Plaintiffs' were seeking entry of a default judgment. Although there is no legal duty to serve opposing counsel with the request for default, there are civility standards that address this situation. District Rule 83.5(g) provides in part, "Every attorney . . . in a case in this court shall certify that he or she has read the Standards for Professional Conduct within the Seventh Federal Judicial Circuit . . . and shall abide by them in all cases in this court." Those standards include, "[w]e will not cause any default or dismissal to be entered without first notifying opposing counsel, when we know his or her identity." Standards for Professional Conduct Within the Seventh Federal Judicial Circuit, Lawyers' Duties to Other Counsel ¶ 18; *see also Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 677 (7th Cir.1987) (the court noting attorney's failure to extend "the usual professional courtesy extended to fellow professionals before the bar of informing the defendant before the entry of default judgment"). Nonetheless, because there was no legal requirement to notify counsel this Court will not grant the motion on that basis.

7

*Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 797-798 (7th Cir. 1980). Here, we have a three-week delay. In addressing this delay, Defendant merely states that "it contested the judgment as soon as it possibly could." (Def.'s Mot. at 7). Had Defendant filed this motion within the ten-day time frame set forth in Rule 59(e) there would have been a far more lenient standard to meet. But, it did not. However, even if General Plumbing could demonstrate prompt action, the existence of such action would not require that the default judgment be set aside. Failure to show good cause alone is a sufficient basis to refuse to set aside the default judgment. *Pretzel & Stouffer,* 28 F.3d at 46. Likewise, even if Defendant could meet "good cause" and "prompt action" they must still get over the hurdle of demonstrating a meritorious defense.

*Meritorious Defense*

"A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." *Jones*, 39 F.3d at 165. It requires more than a "general denial" and "bare legal conclusions." *Pretzel & Stouffer*, 28 F.3d at 46.

Defendant contends that it has a meritorious defense to the complaint comprised of calculation problems with the Audits. Count I of the Complaint seeks to confirm and enforce the arbitration Award entered against the Defendant. In an attempt to show a meritorious defense to Count I, Defendant claims that a number of calculation errors exist in the Audits conducted prior to the filing of this lawsuit. (Def.'s Mot. at 9). The audit Award in this case was issued on April 14, 2005. The parties agreed to extend the time to file any challenge to the Award to July 31,

2005. Defendant did not file such a challenge. When a defendant fails to move to vacate an arbitration award within the allotted limitations period for such a motion, the defendant waives any affirmative defenses to the validity of the arbitration award. *See, e.g.*, *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 430-31 (7th Cir. 1998); *Sullivan v. Gilchrist*, 87 F.3d 867, 871 (7th Cir. 1996). There are a few instances where relief from this affirmative defense bar will be allowed but Defendant has not argued for such relief. *See Rabine*, 161 F.3d at 433 (Where a defendant did not receive notice of the award, or was not a party to arbitration hearing, or where the plaintiffs brought the arbitration against the defendant in bad faith only then would it excuse the failure of a defendant to adhere to the 90-day statute of limitations).

Further, Defendant's reliance upon *Sullivan v. Makeco Plumbing, Ltd.*, No. 02 C 9475, 2004 WL 1243892 (N.D. Ill. June 8, 2004) does not provide any basis for relief. Although *Sullivan* did involve a motion to vacate a default and Judge Zagel did allow the defendant the opportunity to dispute the amount of liability there was no claim to enforce an arbitration award in the case. Because the 90-day time limitation to object was not at issue in *Sullivan* it is inapplicable to a defense to Count I. The Defendant failed to challenge the validity of the arbitration award within the 90-day period. As a result there is no meritorious defense to Count I.

Count II seeks judgment on the Audit for the period from January 1, 2003 through June 30, 2005. Defendant argues that the Audit was not correct and relies exclusively on the portions of the Ann Heneghan affidavit this Court has stricken. Because meeting the "meritorious

defense" prong requires more than a "general denial" and "bare legal conclusions," *Pretzel & Stouffer*, 28 F.3d at 46, Defendant has failed to adequately set forth a defense.

CONCLUSION

Accordingly, this Court finds that the circumstances of this case do not constitute "excusable neglect" within the meaning of Rule 60(b)(1). Defendant's Motion to Vacate the Default Judgment [Doc. No. 16] is hereby DENIED.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **March 31, 2007**